Argued and submitted February 24, reversed in part and remanded October 29, reconsideration denied December 5, 1986, petition for review denied January 13, 1987 (302 Or 571)

# STATE OF OREGON,
*Respondent,*

*v.*

# DAVID ELLSWORTH POWELL,
*Appellant.*

(C83-05-32441, C83-08-33968, C83-08-33966; CA A35549)

727 P2d 136

Richard L. Weil, Portland, argued the cause for appellant. With him on the brief was Richard Allen Carlson, Portland.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Joseph, Chief Judge, and Van Hoomissen and Young, Judges.

JOSEPH, C. J.

## JOSEPH, C. J.

Defendant appeals his convictions for unlawful racketeering activity, ORS 166.720[1] (ORICO), and for two thefts in the first degree. ORS 164.055.[2] The indictments were consolidated for trial.

■    Defendant's first assignment is that the trial court erred by denying his demurrer to the unlawful racketeering activity indictment, which alleged in material part:[3]

### *"COUNT II*

"As part of the same act and transaction alleged in Count I herein, the defendant is accused by the Grand Jury of Multnomah County, Oregon, by this indictment of the crime of

UNLAWFUL RACKETEERING ACTIVITY

committed as follows:

"The said defendant, between November, 1979 and August, 1983, in the County of Multnomah, State of Oregon,

---

[1] ORS 166.720(3) provides:

"It is unlawful for any person employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity * * *."

A "pattern of racketeering activity" is defined in ORS 166.715(3) as "engaging in at least two incidents of racketeering conduct" under circumstances specified therein. "Racketeering activity" is defined by ORS 166.715(5):

"to commit, to attempt to commit, to conspire to commit, or to solicit, coerce or intimidate another person to commit:

"(a) [a]ny conduct which constitutes a crime [under a myriad of statutes, including theft].* * *"

[2] ORS 164.055(1) states, in material part:

"A person commits the crime of theft in the first degree if, by other than extortion, the person commits theft as defined in ORS 164.015; and

"(a) [t]he total value of the property in a single or aggregate transaction is $200 or more * * *."

Theft is defined in ORS 164.015:

"A person commits theft when, with intent to deprive another of property or to appropriate property to the person or to a third person, the person:

"(1) [t]akes, appropriates, obtains or withholds such property from an owner thereof * * *."

[3] Count I of the indictment was dismissed before trial.

did unlawfully and knowingly, through a pattern of racketeering activity, acquire and maintain directly and indirectly, interests in and control of real property and enterprises, to wit: Value Mobile Homes, Suncrest Mobile Homes, and Sup-pro Industries, doing business as Northwest Home Brokers, Ralph Prentice and Kenneth Prentice, contrary to the Statutes in such cases made and provided and against the peace and dignity of the State of Oregon.

*"COUNT III*

"As part of the same acts and transactions alleged in Counts I and II herein, the defendant is accused by the Grand Jury of Multnomah County, Oregon, by this indictment of the crime of

UNLAWFUL RACKETEERING ACTIVITY

committed as follows:

"The said defendant, between November, 1979 and August, 1983, in the County of Multnomah, State of Oregon, did unlawfully and knowingly, while employed by and associated with enterprises, to wit: Value Mobile Homes, Suncrest Mobile Homes, and Sup-pro Industries, doing business as Northwest Home Brokers, Ralph Prentice and Kenneth Prentice, conduct and participate, directly and indirectly, in such enterprises through a pattern of racketeering activity, to wit: thefts in the first degree, contrary to the Statutes in such cases made and provided and against the peace and dignity of the State of Oregon."

Defendant argues that the indictment was defective, because it failed to describe sufficiently the predicate crimes constituting the racketeering activity. We agree. *State v. Kincaid,* 78 Or App 23, 714 P2d 624 (1986).

■     The state argues that, because the specifically pled indictments for first degree theft were consolidated with the ORICO indictment and because the district attorney told defendant that the only predicate offenses supporting his ORICO charge were the itemized first degree thefts, this case is distinguishable from *Kincaid.* Those distinctions do not change the result. In determining the validity of an indictment, a court is bound by the terms of the instrument. *State v. Sweet,* 46 Or App 31, 610 P2d 310 (1980); *State v. Mathie,* 42 Or App 571, 600 P2d 961 (1979), *rev den* 288 Or 253 (1980).

■     Defendant next assigns error to the admission in evidence of numerous civil complaints and judgments against

his employer, Suncrest Mobile Homes, as well as opinion testimony of a witness concerning the financial condition of that company. The court overruled defendant's objections:

> "[T]he reason that the Court let in evidence of other transactions was that any single isolated transaction alone might very well be considered a civil wrong, but the theory of the State's case was that this was a continuous process, and plan, if you will, a method of operation that could only be shown and established by showing its constant repetition with other people, to the point that what might be considered a civil wrong becomes a criminal one when a person is aware of the very nature of the business they are doing and the fact that the transaction they are entering into is going to deprive people of property, with no likelihood that they are going to get what it is that they bargained for. * * *

> "Admittedly, it is prejudicial. I have no quarrel with that. But, I think it is probative, and it comes within the exception of [OEC 404(3)] to establish not only motive, not only opportunity, but intent, preparation, plan, knowledge, all of these things, which those sorts of things — that sort of other evidence, other wrongs would be admissible.

> "Admittedly, some of the evidence the Court let in was hearsay evidence, if it was offered for the proof of that, without the actual people being available to be cross-examined. * * * The Court concluded that it was proper to show that those complaints were made and communicated to prove that the actors involved, including the defendant[,] had knowledge of the fact that there were many, many, many complaints about various transactions that they were entering into. Notwithstanding that, that doesn't necessarily mean they are true or untrue. But, they are aware the complaints were made to these various divisions, and notwithstanding that, they chose to act as the evidence showed they did act. I think it is relevant to go to their state of mind in dealing in the fashion they have."

We agree that the evidence was relevant to the ORICO charge and was not offered to prove the truth of the matter asserted. Admitting it was not error.

■ Defendant also argues that, if the ORICO conviction is reversed, the theft convictions must also be reversed, because the evidence in question was admitted solely with regard to proving the ORICO charge. The indictments were consolidated for trial without objection from defendant, and

he did not request a limiting instruction. He cannot now be heard to complain.[4]

Judgment in trial court case No. C83-05-32441 reversed; trial court cases Nos. C83-08-33968 and C83-08-33966 remanded for resentencing.

---

[4] Defendant's other assignments of error have no merit.