Argued and submitted May 25, affirmed September 12, reconsideration denied December 5, 1990, petition for review denied February 5, 1991 (311 Or 151)

STATE OF OREGON,
*Respondent,*

*v.*

FRED EUGENE MOORE,
*Appellant.*

(88-10-0260, 88-10-0261, 88-10-0262,
88-10-0263; CA A61539)

797 P2d 1073

Robert J. McCrea, Eugene, argued the cause for appellant. With him on the brief was McCrea, P.C., Eugene.

Ann Kelly, Assistant Attorney General, Salem, argued the

cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Riggs, Presiding Judge, and Edmonds and De Muniz, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

Defendant was charged with two counts of possession of cocaine and two counts of delivery of cocaine. ORS 475.992. At trial, he admitted the drug sales but contended that the informant purchasers had entrapped him. *See* ORS 161.275.[1] A jury rejected the entrapment defense and convicted him on all charges.[2] On appeal, he contends the trial court erred when it (1) allowed the prosecutor to ask defendant on cross-examination if his wife had caught him having an affair with a woman named Magness or if he had expressed physical intimacy toward Magness; and (2) allowed a rebuttal witness to impeach defendant regarding his physical contact with Magness. We affirm.

The state alleged that defendant delivered cocaine to police informant Donnelly on August 3, 1988, and separately to police informant Mull on August 19, 1988.[3] As part of the state's case, Mull testified that she received the cocaine in a trailer behind defendant's service station and that on that occasion defendant had introduced her to Magness. According to Mull, defendant described Magness as the person who lived in the trailer and who "holds some of my stuff * * * and sells some for me." The state also introduced evidence that, after a meeting between Mull and defendant in early September, 1988, in which defendant refused to sell cocaine to Mull, Magness was observed to speak briefly with defendant, then follow Mull in an automobile. Mull eventually confronted Magness, and Magness admitted that she was checking on her.

The state first began to suggest that defendant and Magness had more than a drug business relationship when,

---

[1] ORS 161.275 provides:

"(1) The commission of acts which would otherwise constitute an offense is not criminal if the actor engaged in the proscribed conduct because the actor was induced to do so by a law enforcement official, or by a person acting in cooperation with a law enforcement official, for the purpose of obtaining evidence to be used against the actor in a criminal prosecution.

"(2) As used in this section, 'induced' means that the actor did not contemplate and would not otherwise have engaged in the proscribed conduct. Merely affording the actor an opportunity to commit an offense does not constitute entrapment."

[2] For sentencing, the court merged the possession convictions with the delivery convictions.

[3] This is also the cocaine that defendant allegedly possessed.

during cross-examination of defendant's wife, the prosecutor asked her whether she and defendant had a "discussion about [Magness] for some reason" and whether defendant's wife was aware that defendant and Magness had taken "a couple of trips" together to Washington and California. No objection was raised to either question. She answered that she felt that Magness was "hanging around too much" and denied being aware of any joint trips by Magness and defendant.

At the conclusion of the wife's testimony, defense counsel expressed concern that the prosecutor was seeking to inject into the case some evidence about a relationship between defendant and Magness unrelated to drug dealing. Defendant's counsel objected to further evidence about the subject on alternative grounds that it was not relevant or that any relevance was outweighed by the unfairly prejudicial impact of the evidence. The trial court declined to rule on the issue in advance.

Defendant did not mention Magness during his own direct examination. On cross-examination, he denied introducing Magness to Mull, denied knowing that Magness was in the drug business and denied directing Magness to follow Mull after the September meeting between defendant and Mull. After those denials, the prosecutor asked defendant, "Isn't it a fact that your wife caught you and Jill Magness having an affair?"[4] Defense counsel objected and moved for a mistrial. The objection was overruled, and defendant answered "no" to the question. Next, the prosecutor, again over an objection, asked whether defendant had expressed "any physical intimacy towards * * * Jill Magness." Again, defendant answered, "No."

In rebuttal, the state called McKern, who testified that, on occasion, she had seen defendant buttoning his shirt as he left Magness' trailer, had seen him pat Magness "on the butt," had seen him blow Magness "a couple of kisses" and

---

[4] Given that the prosecutor was intent on injecting this evidence into the case, it is perplexing why he did not simply ask defendant if he had engaged in an affair with Magness, instead of the oblique question about whether defendant's wife had caught him having an affair with Magness. Literally, a no answer to this question only establishes that defendant's wife did not "catch" defendant and Magness—not whether they were engaged in an affair. However, the parties justifiably treat the question as suggesting an affair that defendant could confirm or deny by his answer.

had seen defendant and Magness "chumming"[5] and leaning against one another. Defendant's objection to that testimony was also overruled.

Defendant contends that the prosecutor's question during cross-examination of defendant regarding defendant's purported affair and physical contact with Magness and McKern's rebuttal testimony were not relevant and were offered only to "villify and disgrace" defendant.

■ Generally, extrinsic evidence may not be used to impeach a witness on a collateral matter. *See State v. Thompson,* 28 Or App 409, 559 P2d 1294, *rev den* (1977); McCormick, *Evidence,* § 47 (2d ed 1972).[6] The rule is applicable in a case like this, where it appears that the prosecutor's inquiry was posed to the defendant only for impeachment purposes. *See State v. Johnson,* 277 Or 45, 559 P2d 496 (1977); *United States v. Pantone,* 609 F2d 675, 681 (3rd Cir 1979).

In *State v. Johnson, supra,* the defendant was charged with criminal activities in drugs. On direct examination, Johnson admitted that he had previously been convicted of criminal activity in drugs. On cross-examination, he denied that he had "dealt" in drugs. To rebut his denial, the state called a police officer, who testified that, on some previous occasion, Johnson had stated, " 'Why are you fooling around with me? There's at least two other dope dealers in Portland bigger than I am.' " 277 Or at 47. Holding that the officer's testimony was not admissible as rebuttal of Johnson's statements on cross-examination, the Supreme Court said:

> "There is no doubt that the improper evidence was prejudicial. Nothing could have been more harmful than evidence of an admission that at some time defendant had been a drug dealer. It is obvious that the questions were asked on cross-examination for the sole purpose of making a hook on which to hang the legally irrelevant evidence of the police officer's conversation with defendant. Such trial tactics upon the part of the state are to be discouraged." 277 Or at 49.

---

[5] In *Webster's Third New International Dictionary* 404 (unabridged 1976), "chummy" is defined: "marked by or affording easy familiarity, companionability, and shared interests[.]" We assume that that is what the witness meant by "chumming."

[6] McCormick indicates that the rule is often expressed by saying that the witness' answer is conclusive or that the cross-examiner must "take the answer."

■ Defendant here sought to avoid criminal liability by claiming that he had been entrapped. A defendant who asserts entrapment should not be permitted to complain about a "searching inquiry" into his own conduct and predisposition, insofar as they bear on the issue of entrapment. *State v. Barr,* 62 Or App 46, 50, 660 P2d 169 (1983) (*citing Sorrells v. United States,* 287 US 435, 53 S Ct 210, 77 L Ed 413 (1932)). However, the prosecutor's "searching inquiry" here was unrelated to the entrapment issue.

■ Magness did not testify. Nothing in Mull's testimony during the state's case-in-chief indicated any kind of romantic or physical relationship between defendant and Magness. Neither did defendant mention Magness in any part of his direct testimony. Whether defendant's wife had caught defendant and Magness having an affair or whether defendant had "expressed physical intimacy towards * * * Magness" did not have any tendency to prove defendant's predisposition to deliver cocaine to Donnelly or Mull. The prosecutor's inquiry was not relevant and was outside the scope of direct examination. Defendant's objections should have been sustained.

McKern's rebuttal testimony had no function other than to contradict defendant. In the absence of an independent basis for admissibility, defendant's objection to McKern's testimony should have been sustained. *See State v. Peaslee,* 59 Or App 519, 651 P2d 182, *rev den* 294 Or 212 (1982), 294 Or 569 (1983).

■ Although the evidence should not have been admitted, we are required to affirm the trial court if there is little likelihood that the error affected the verdict. *See State v. Hansen,* 304 Or 169, 180, 743 P2d 157 (1987).[7]

Although defendant's credibility was central to his entrapment defense, McKern's testimony was similar to, and in some respects less prejudicial to defendant, than testimony already heard by the jury and not objected to. Defense witness

---

[7] In the past, the Supreme Court has stated that a substantial right of a criminal defendant is not affected if there is substantial and convincing evidence of guilt and little likelihood that the error affected the verdict. *See State v. Miller,* 300 Or 203, 220-21, 709 P2d 225 (1985), *cert den* 475 US 1141 (1986). However, in *State v. Hansen, supra,* the court indicated that there was no justification for analyzing the two criteria separately, because it was apparent that applicable constitutional and statutory standards are fully expressed by the second criterion. 304 Or at 180.

Yuhas testified that defendant and Magness were "seeing each other." Defendant's wife testified that she felt that Magness was "hanging around too much" and had discussed that with defendant. In addition, defense counsel, in his opening statement, and through other witnesses, brought out allegations by Donnelly that defendant used cocaine as "bait" to seek sexual relations outside his marriage. Donnelly testified that defendant had told her that, if she would "go away" with him for the weekend, she could "do" as much cocaine as she wanted. Donnelly also testified that defendant's cousin reported a similar offer from defendant.

The jury was fully apprised, from witnesses other than McKern, of allegations that defendant had pursued relationships with females outside his marriage. After review of the entire record, we conclude that there is very little, if any, likelihood that the prosecutor's questions on cross-examination and the erroneous admission of McKern's testimony affected the jury's verdict.

Affirmed.