STATE OF OREGON,
*Respondent,*

*v.*

ADRIAN COLEMAN,
*Appellant.*

(91-11-35963; CA A75422 (Control))

STATE OF OREGON,
*Respondent,*

*v.*

ADRIAN ALLEN COLEMAN,
*Appellant.*

(91-12-36620; CA A75810)

883 P2d 266

Phillip M. Margolin argued the cause for appellant. With him on the briefs was Margolin & Margolin.

Ann F. Kelley, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

Defendant appeals his convictions for promoting prostitution, ORS 167.012, conspiracy to promote prostitution, ORS 161.450, racketeering, ORS 166.720, and other related crimes. He challenges the admissibility of various items of evidence considered by the jury at his trial, the sufficiency of the indictment underlying his conviction, the existence of probable cause to support a warrant to search his grandmother's house, and the propriety of his sentence for racketeering. We affirm in part and reverse in part.

Defendant was charged in two separate indictments. One charged defendant with promoting prostitution on 17 occasions between May 1990 and August 1991. The other charged defendant, defendant's grandmother Alberta Willis, defendant's companion Shari Webb, and two other codefendants with various crimes, including racketeering and conspiracy to promote prostitution,[1] based on incidents that also occurred in 1990 and 1991. During almost the entire period of time covered by both indictments, defendant was imprisoned on an earlier conviction.

Defendant was tried on both indictments in a joint trial with Webb and Willis. At trial, the state's theory was that: (1) defendant was Webb's pimp; (2) Webb began working for him as a prostitute in 1987 and continued to do so after defendant went to prison in 1990; (3) while defendant was in prison, he "controlled" Webb through phone calls, visits and letters; and (4) Willis acted as defendant's "banker" while he was incarcerated, receiving money from Webb and keeping it for defendant in her home. Defendant was ultimately convicted of 15 counts each of promoting prostitution and conspiring to promote prostitution, and of single counts of racketeering, conspiracy to commit perjury, income tax evasion, and conspiracy to commit income tax evasion. He was sentenced to a total of 200 months in prison.

■ Defendant's first 11 assignments of error challenge the admission into evidence of photographs of defendant wearing expensive jewelry or displaying large amounts of

---

[1] The indictment also charged defendant with income tax evasion, ORS 314.075, attempted income tax evasion, ORS 161.405, conspiracy to commit income tax evasion, ORS 161.450, and conspiracy to commit perjury. ORS 161.450.

money. Defendant contends that the photographs were not only irrelevant, but were unduly prejudicial, as conforming to a supposed racial stereotype of a pimp.

We do not address whether the disputed photographs were irrelevant or more prejudicial than probative because their admission was, at worst, harmless error. All of the information that might conceivably be drawn from the photographs was otherwise presented to the jury without objection. In particular, the prosecution presented, without objection: (1) close-up photographs of the jewelry, (2) an assessment of its worth, (3) defendant's own previous admissions that he was a pimp; (4) letters written by defendant referring to himself as a "pimp";[2] and (5) the fact that defendant had been convicted in 1988 for promoting prostitution. Given those circumstances, the admission of the photographs could be no more than harmless error. *State v. Hansen*, 304 Or 169, 180, 743 P2d 157 (1987); *State v. Moore*, 103 Or App 440, 445-46, 797 P2d 1073 (1990), *rev den* 311 Or 151 (1991).

■ In his next two assignments of error, defendant challenges the sufficiency of the indictment underlying his convictions for conspiracy to promote prostitution. Defendant demurred to each of the counts charging him with that crime (Counts 8 through 23) and later moved for a judgment of acquittal on those counts on the ground that the facts alleged do not constitute a crime. The trial court overruled the demurrer and denied the motion. Defendant assigns each of those rulings as error.

---

[2] For example, in a 1988 letter to codefendant Webb, defendant wrote:

"I'm keeping my mind on a positive progressive slate, staying motivated, enthusiastic and sincere as far as this pimpin ordains. * * * Yeah, ain't nothing changed far as who's pimpin. * * * Bought some more luggage. You know pimp need alot of baggage to hold all this. * * * It seems that you've had alot of hostility cause a pimp went pimpin. * * * I've been trying to keep a letter on your line consistently to keep you intuned with my activities or my progress as far as keepin pimpin."

In a 1990 letter to Webb, written from jail, defendant wrote, "What is it with you? Can't you do what a pimp ask you?" In another letter sent from jail, he wrote,

"I keep telling you that if you can't do as I ask, or expect, maybe we oughta let you ride until a pimp rises. If you're going to be a * * * bitch now then act the same as you would of back then. Seems like a pimp is losing control over what the hell his bitch is doing."

Counts 8 though 23 are identical, except for specifying different dates for the alleged conspiratorial agreements. Each count states:

"The said *defendant*, Adrian Allen Coleman, on or about [date], * * * did unlawfully, with the intent that conduct constituting the crime of Promoting Prostitution punishable as a felony be performed, *agree with each other* to engage in the performance of [acts that constitute promoting prostitution.]" (Emphasis supplied.)

Defendant contends that because the emphasized language does not identify some other person or persons with whom defendant agreed to engage in a criminal act, it fails to allege a criminal conspiracy. The state responds that a coconspirator's identity is not an essential element of the crime of conspiracy, and, thus, defendant's coconspirators did not need to be identified in Counts 8 through 23.

■ The state relies on *State v. Shadley/Spencer/Rowe*, 16 Or App 113, 517 P2d 324 (1973), which says that

"as a matter of law, the identity of persons connected with a criminal offense need not be stated in an indictment unless such identity is an essential element of the crime charged." 16 Or App at 121.

That statement, although correct, is inapt. The indictment challenged here not only fails to allege the *identities* of defendant's coconspirators, but also fails to allege their very *existence*. Regardless of whether the former is an essential element of conspiracy, the latter clearly is: A person is guilty of criminal conspiracy only if he or she agrees to cause the performance of some criminal act "with one or more persons." ORS 161.450. Here, Counts 8 through 23 do not satisfy that element in that they allege that a single named defendant "did * * * agree with each other" to promote prostitution. Consequently, defendant's demurrer to Counts 8 through 23 of the indictment should have been granted. We reverse defendant's convictions on those counts.

■ Defendant's fourteenth and fifteenth assignments of error concern the part of the state's case pertaining to Executive Escort Service, an alleged prostitution front that employed codefendant Shari Webb for a period of time. He argues that because he had no involvement with Executive

Escort Service, and, in fact, attempted to dissuade Webb from her participation, the trial court erred in permitting the jury to consider evidence concerning the service in the context of the joint trial. Defendant contends that the potential for juror confusion in the joint trial was particularly prejudicial. Defendant identifies three rulings as erroneous in that regard: (1) the denial of his motion to sever the Executive Escort allegations from "his" case; (2) the denial of his motion to sever his case entirely from those of his codefendants; and (3) the denial of his motion to strike any mention of the service from the list of predicate acts supporting the racketeering charge against defendant and his codefendants.

There is, in fact, very little evidence linking defendant to Executive Escort Service. Walter Waldron, the owner of Executive Escort Service, testified that Webb worked for the escort service in 1990 and 1991, and that he was aware that defendant was Webb's pimp. However, Waldron had never seen defendant and had never sent defendant money. Moreover, defendant wrote to Webb expressing his disapproval of her involvement with the escort service.[3] Finally, although Webb, using the alias "Shari DeKoeyer," paid money into defendant's prisoner's trust account in 1990 and 1991, there is no evidence that that money came from Webb's activities with Executive Escort Service, much less that defendant knew the source of those funds.

Nonetheless, the lack of evidence linking defendant to Executive Escort Service did not compel severance of those allegations or of the codefendant's cases. Under ORS 136.060, jointly-charged defendants must be tried jointly unless the trial court concludes that it is "clearly inappropriate" to do so. Although defendant argues that he was prejudiced by inclusion of the Executive Escort Service issues in the joint trial, particularly because of the likelihood of jury confusion, such potential prejudice, without more, cannot justify severance:

"There is the possibility of prejudice in any joint trial. In amending ORS 136.060 [to require joint trials unless 'clearly inappropriate'], the people [of the State of Oregon] chose to

---

[3] Waldron also testified that he asked Webb if she wanted to buy the escort service, and she responded that she had to talk to "someone" about it. When Waldron later asked Webb if she had talked to defendant, she said, "no."

require joint trials, despite that possibility." *State v. Umphrey*, 100 Or App 433, 438, 786 P2d 1279, *rev den* 309 Or 698 (1990).

In this case, inclusion of the Executive Escort Service issue in a joint trial did not violate any statute or conflict with any constitutional provision. *See State v. Umphrey, supra*, 100 Or App at 438. The joint trial was not "clearly inappropriate."

Defendant's alternative assignment that the trial court erred in denying his motion to strike predicate act 56 is perplexing. The record indicates that the trial court *granted* that motion, at least to the extent of removing any reference to defendant from predicate act 56. Defendant never expressed any objection to the trial court about that ruling, and does not explain to this court why that ruling amounted to a denial or was otherwise in error. Defendant has shown no error.

■ Defendant's sixteenth assignment of error challenges the trial court's decision to admit certain hearsay statements under the "coconspirator exception" of OEC 801(4)(b)(E).[4] The disputed statements were made by Melissa Kelly, a prostitute who worked with Webb for Executive Escort Service, to Waldron, the owner of the service. Kelly told Waldron, among other things, that Webb had a boyfriend named "Adrian," who was her pimp and who was serving time in the penitentiary. Defendant contends that those statements did not fall within OEC 801(4)(b)(E) because defendant and the declarant, Kelly, were not coconspirators and the statements were not made in furtherance of any conspiracy.

Again, as in our consideration of the alleged "stereotyping" photographs, *supra,* even if we were to assume that the trial court's evidentiary ruling was erroneous, any error was harmless. There was overwhelming evidence in the

---

[4] OEC 801(4)(b)(E) provides:

"A statement is not hearsay if;

"* * * * *

"(b) The statement is offered against a party and is;

"* * * * *

"(E) A statement by a coconspirator of a party during the course and in furtherance of the conspiracy."

record showing that defendant was, indeed, Webb's pimp at the relevant time. *See, e.g.,* n 2, *supra.* Given that evidence, there is little likelihood that the decision to admit Kelly's statements had any effect on the verdict. *State v. Hansen, supra,* 304 Or at 180.

■ Defendant next assigns error to the trial court's denial of his motion *in limine* to limit testimony by Deborah Curry about defendant's pimping activities between 1984 and 1989 with Webb and other prostitutes. In particular, defendant unsuccessfully sought to restrict Curry's testimony to post-1987 occurrences. Defendant contended that the balance of Curry's testimony was both irrelevant to the charges against him (which are based on occurrences in 1990 and 1991) and inadmissible under OEC 404(3),[5] as impermissible evidence of prior bad acts. The state contends that defendant failed to preserve the claimed error by failing to renew his objections to Curry's testimony, with particularity, when she testified at trial.

We agree with the state. In response to defendant's *in limine* motion, the trial court informed defendant's counsel that it was not denying the motion, but only ruling that it was premature. That ruling did not preclude defendant from objecting to particular portions of Curry's testimony on relevance and "character tendency" grounds as that testimony was heard—and, indeed, implicitly invited such specific contemporaneous objections. That approach was sensible and fair. Before hearing Curry's testimony, the trial court could not determine which, if any, of the acts she would describe should be excluded either as irrelevant or as inadmissible "prior bad acts" evidence. Moreover, at least in the abstract, portions of Curry's projected testimony *were* relevant in that they showed that defendant was engaged in an ongoing enterprise,[6] and appeared sufficiently probative in that

---

[5] OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake."

[6] Defendant was charged on numerous counts of conspiracy, which is a "continuing course of conduct." ORS 161.465(1).

regard to outweigh their allegedly prejudicial effect.[7] Thus, without knowing the precise content and context of the testimony, the trial court was entitled to defer its decision and to deny defendant's *in limine* motion as premature. *State v. Foster*, 296 Or 174, 183, 674 P2d 587 (1983). Notwithstanding the trial court's implicit invitation to renew his objections, defendant failed to do so.[8] Consequently, defendant failed to preserve the error now assigned. *State v. Isom*, 313 Or 391, 405, 837 P2d 491 (1992).

■ Defendant's eighteenth assignment of error challenges the trial court's denial of his motion to suppress evidence seized from Willis's house pursuant to a search warrant. Defendant raises substantial arguments that the search warrant was issued without the requisite probable cause, because the information provided in the affidavit supporting the warrant was stale and did not establish that the objects of the search were likely to be found in Willis's house. Again, we do not reach the merits of defendant's arguments because any alleged error was harmless. Items seized from Willis' home and presented as exhibits at trial were merely cumulative or duplicative of other evidence that was properly before the jury.

The evidence that was gathered from the search of the Willis residence and later submitted to the jury included a large amount of cash, as well as money orders and receipts for money orders sent by Webb from Atlantic City and endorsed by Willis. However, those items merely duplicated other evidence, lawfully obtained and submitted to the jury, showing that Webb had wired large amounts of money to Willis from Atlantic City. *See State v. Walton*, 311 Or 223, 231, 809 P2d 81 (1991) (federal constitutional error is not grounds for reversal if the error was harmless beyond a reasonable doubt; under Oregon Constitution, error is harmless if there is

---

[7] "Prior bad acts" evidence is admissible if (1) it is independently relevant for a noncharacter purpose; (2) the proponent offers sufficient proof that the act or acts were committed; and (3) the probative value of the evidence is not substantially outweighed by its prejudicial effect. *State v. Johnson*, 313 Or 189, 195, 832 P2d 443 (1992).

[8] This was not a case in which the renewal of the objection raised *in limine* would have been futile because the outcome was foreordained.

substantial and convincing evidence of guilt and little likelihood that the error affected the verdict).

The search of Willis's home also yielded the "stereotyping" pictures of defendant that were the object of defendant's first 11 assignments of error and the jewelry depicted in those photos. However, given the quantity and quality of the direct evidence that defendant was operating a pimping "business,"[9] those pictures and jewelry, which were submitted to the jury as circumstantial evidence of defendant's activities, could not have significantly damaged defendant's case.

During the search of Willis's home, the police also found a calendar, in defendant's handwriting, listing varying amounts between 600 and 1600 for each date between May 8 to June 17, with the statement:

"Keep pace of yourself. I want to see this copy completed day by day when you return. Goal: 30,000 when you board the plane on the 17th."

Although the introduction of that calendar would, by itself, seem especially prejudicial, it was merely duplicative of other, legally obtained evidence. The state also introduced a virtually identical, but lawfully obtained income projection calendar, listing dates between April 1 and May 21, and bearing defendant's handwritten notation: "April 2 - May 21; 47 days; 45,000; I wish for you to take this calendar with you. Along with all my letters. That way you may mark what you make." The court's denial of defendant's suppression motion was, at worst, harmless error. *See State v. Hansen, supra.*

Finally, a "wanted" bulletin that was issued by the Garden City, California, police department in connection with a murder investigation was discovered in Willis's home. The bulletin was submitted to the jury only after it was heavily redacted by the court. The redacted document contained virtually nothing but two photographs—one of defendant and one

---

[9] Perhaps the strongest evidence submitted to the jury regarding defendant's activities as a pimp came from the unchallenged search of Webb's apartment. That search yielded numerous letters written by defendant from prison to Webb which, if read in the context of evidence of Webb's prostitution activities in Atlantic City, provide compelling evidence that defendant was orchestrating those activities and knowingly receiving the proceeds. Defendant provided Webb with schedules; told her when to leave and when to come home; and alluded to money earned by Webb.

of a person named Randy West—and a statement that "West and [defendant] are pimps."

■■ In addition to arguing that the bulletin should have been suppressed as the product of an illegal search, defendant contends that the statement contained therein is inadmissible hearsay. We note, however, that the prosecutor expressly stated that the bulletin was not being offered for the truth of the statement, but to show that Willis, in whose house it was found, had notice of her grandson's alleged activities. An out-of-court statement offered to show someone's knowledge, and not to prove the truth of the matter asserted, is not hearsay. OEC 801(3); *State v. Powell,* 82 Or App 13, 17, 727 P2d 136 (1986), *rev den* 302 Or 571 (1987).[10]

■ Defendant also argues that the bulletin, even in its redacted form, was unduly prejudicial because "it left what was not presented to the jury as a subject of speculation for the fertile minds of the jurors." The same might be said of almost any redacted document. Lacking a more specific explanation, we find defendant's undue prejudice claim to be groundless.

For reasons implicit in the discussion above, we also find that *any* possible error stemming from admission of this document, including the denial of defendant's motion to suppress it along with other evidence gathered at his grandmother's house, cannot provide grounds for reversal. The document submitted to the jury had been so heavily edited, and was offered for such a limited purpose, that its admission, if erroneous, was harmless beyond a reasonable doubt. *State v. Walton, supra.*

■ In his twentieth and final assignment of error, defendant argues that the sentencing court abused its discretion when it assigned a crime seriousness ranking of 10 to defendant's conviction for racketeering, when the underlying crime, promoting prostitution, is ranked at level 8. Although racketeering is an unranked offense, its seriousness, in most cases, is determined by the crime seriousness of the underlying crime. *See* Commentary *Oregon Sentencing Guidelines*

---

[10] We note that, in denying the motion, the court stated its willingness to "instruct the jury that this evidence only comes in as far as Ms. Willis." Defendant never requested such an instruction.

*Implementation Manual*, 14 (1989). However, a sentencing court still retains the discretion to decide that a higher ranking is appropriate. We will affirm a decision to that effect so long as the court states its reasons on the record, and those reasons reflect a proper exercise of the court's discretion. *State v. Rathbone II*, 110 Or App 419, 422, 823 P2d 432, *rev den* 313 Or 330 (1992).

Here, the sentencing judge stated on the record that he was imposing the higher ranking because defendant was particularly successful as a pimp, because pimping is akin to slavery and exploits vulnerable women and girls, and because pimping is "one of the most reprehensible crimes in the book." Given that recitation, we find no abuse of discretion. The sentence imposed was not erroneous.

Convictions for conspiracy to promote prostitution reversed; otherwise affirmed.