Argued and submitted May 28, 1997, affirmed March 18, petition for review denied June 30, 1998 (327 Or 317)

# STATE OF OREGON,
*Respondent,*

*v.*

# DEANGELO LEROY TURNER,
*Appellant.*

## (93-02-30863; CA A92779)

956 P2d 215

Diane L. Alessi, Deputy Public Defender, argued the cause for appellant. With her on the brief was Sally L. Avera, Public Defender.

Kaye E. Sunderland, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Before Riggs, Presiding Judge, and Deits, Chief Judge,* and Landau, Judge.

LANDAU, J.

---

\* Deits, C. J., *vice* Leeson, J., resigned.

## LANDAU, J.

Defendant appeals a judgment of conviction on three counts of murder and one count each of first-degree rape and first-degree sexual abuse. His principal contention on appeal is that the trial court erred in permitting the state to try its case against him jointly with its case against codefendant Ronald Simmons. According to defendant, he was seriously prejudiced by the trial court's failure to order severance of the two trials and is entitled to reversal on that basis. We affirm.

The police found the body of Erinn Radke, who apparently had been stabbed to death. Investigation revealed that she had been killed in a nearby apartment rented by Shanta Turner. Further investigation revealed that Turner's brother, defendant, and Ronald Simmons had been seen with Radke at a local restaurant shortly before the discovery of Radke's body.

When questioned by police, defendant gave several different versions of the events leading up to Radke's death. Ultimately, he told the police that he and Simmons met Radke at the restaurant and eventually went to his sister's apartment. There, he said, he raped Radke in the back bedroom. He said that he then went into the living room and tried to sleep, only to be disrupted a short time later by the sound of Radke screaming. Defendant said that he ran into the bedroom and found Simmons standing over Radke's body with a knife in his hand. Simmons, he said, told him that he had killed Radke because she might have told the authorities that she had been raped. When questioned by police, Simmons initially denied any criminal conduct. His story, too, then changed. Ultimately, he said that it was he who had consensual sex with Radke, that it was he who went into the living room to rest and that, when he heard screams coming from the bedroom, it was defendant who was standing over Radke's body with knife in hand.

Defendant and Simmons were jointly indicted for multiple counts of aggravated murder, rape, sodomy and sexual abuse in the first degree. Before trial, defendant moved for severance of his trial, arguing that he could not receive a fair trial as a codefendant with Simmons. The trial court

denied the motions, and the trial proceeded against both defendant and Simmons.

At trial, the state took the position that both defendant and Simmons were responsible for Radke's death and that both were guilty of the charges against them. Defendant took the position that Simmons killed Radke. Simmons, in turn, attempted to prove that defendant committed the murder. During his opening statement, Simmons said that defendant had lied to the police, that he had changed his story too often to be believed and that the evidence did not support his version of the events. During cross-examination of several of the state's witnesses, Simmons stressed inconsistencies in various statements that defendant had made to the police. When defendant attempted to introduce the testimony of two witnesses who, he claimed, would have testified that Simmons confessed to the murder, Simmons objected, and the trial court sustained the objection.

Simmons took the stand and testified that defendant committed the murder and that he had committed no wrong. During the examination of Simmons, the trial court received a note from a juror who complained that defendant apparently had been making eye contact in an attempt to communicate to the juror that Simmons was not telling the truth. The trial court examined the juror, and defendant moved to strike him as a juror and renewed his motion to sever. Simmons opposed the motion. Meanwhile, the state, in "an exercise of caution," agreed that the juror should be excused. The trial court found that the juror was not prejudiced in any way from the eye contact, that the juror clearly understood his obligation to judge the case impartially on the evidence and, on the basis of those findings, concluded that the juror need not be excused.

On cross-examination, the state attempted to impeach Simmons's testimony, asking whether he had conspired to shift responsibility for the murder to defendant by persuading another individual, Lavell Matthews, to testify falsely that defendant had confessed. Simmons denied that he had done so. The state called Matthews as a rebuttal witness to prove that Simmons had attempted to "plant" a confession by defendant. Defendant requested and received a

jury instruction that "statements by Mr. Matthews attributed to [defendant] may only be used in deciding the charges against Mr. Simmons."

In its closing argument, the state emphasized that it was not asking the jury to decide which of the two codefendants was guilty of the crimes charged. Regardless of who held the knife, the state argued, both defendants had equal involvement in causing the victim's death. Defendant adhered to his version of the events, arguing that is was Simmons who was guilty. Simmons, in turn, attempted to shift the blame to defendant.

The jury ultimately found defendant guilty of murder, rape and sexual abuse and found Simmons guilty of the lesser included offense of manslaughter. On appeal, defendant assigns error to the trial court's failure to sever the trial. He first contends that, because his and Simmons's defenses were "mutually exclusive," it was *per se* inappropriate to try them together. In the alternative, he argues that, as a result of its decision to try the two together, the court committed a number of errors that would not have happened had the cases been tried separately. Specifically, he contends that, (1) Simmons was able to argue in his opening statement essentially as a second prosecutor; (2) the trial court sustained Simmons's objection to the hearsay testimony of defendant's witnesses who would have testified that Simmons confessed to the murder; (3) the trial court refused to excuse a juror whom defendant believed to be biased against him even though the state agreed that the dismissal was appropriate; (4) the trial court permitted the state to call Matthews as a rebuttal witness to impeach Simmons with testimony that was inherently prejudicial to defendant; (5) in closing argument, Simmons again acted essentially as a second prosecutor in disputing defendant's version of the events; and (6) the jury was confused about the extent to which it could consider evidence against Simmons as evidence against defendant.

The state argues that, under ORS 136.060, jointly charged defendants "shall be tried jointly" unless the court concludes before trial that it is "clearly inappropriate" to do so. According to the state, there is no *per se* rule that it is

"clearly inappropriate" to conduct a joint trial in a case in which defendants assert mutually antagonistic or inconsistent defenses. To the contrary, the state argues, severance is required only when defendant demonstrates that a joint trial would violate an applicable statute or conflict with a constitutional provision. The state contends that in this case defendant has failed to demonstrate that any of the asserted errors that occurred at trial, alone or in combination, satisfied that substantial showing.

ORS 136.060 governs the disposition of motions to sever criminal trials:

"(1) Jointly charged defendants shall be tried jointly unless the court concludes before trial that it is clearly inappropriate to do so and orders that a defendant be tried separately. In reaching its conclusion the court shall strongly consider the victim's interest in a joint trial.

"(2) In ruling on a motion by a defendant for severance, the court may order the prosecution to deliver to the court for inspection in camera any statements or confessions made by any defendant that the prosecution intends to introduce in evidence at the trial."

We have had few occasions to address the meaning of that statute. In *State v. Umphrey*, 100 Or App 433, 786 P2d 1279, *rev den* 309 Or 698 (1990), we explained that ORS 136.060

"places substantial limitations on defendants being tried separately, by providing that jointly charged defendants 'shall be tried jointly' unless the court determines that it is 'clearly inappropriate.' "

*Id.* at 437. The defendant in that case complained that he had demonstrated substantial prejudice that resulted from the introduction of an inculpatory confession of a codefendant and that such prejudice made a joint trial clearly inappropriate. We disagreed:

"ORS 136.060(1) does not provide for severance on a showing of prejudice. There is the possibility of prejudice in any joint trial. * * * [T]he people chose to require joint trials, despite that possibility.

"We find no basis to conclude that a joint trial was 'clearly inappropriate.' The trial court did not violate the

applicable statutory provisions nor conflict with any constitutional provisions."

*Id.* at 438.

We again addressed the application of ORS 136.060 in *State v. Coleman*, 130 Or App 656, 883 P2d 266 (1994), *rev den* 320 Or 569 (1995). In that case, the defendant argued that, because there was little evidence linking him to the activities of his codefendant, the jury likely was confused about the defendant's own guilt, and that likelihood of confusion prejudiced his opportunity to obtain a fair trial and justified severing his trial from that of his codefendant. We rejected the argument, holding that "such potential prejudice, without more, cannot justify severance." *Id.* at 661. Because the decision to try the two defendants jointly "did not violate any statute or conflict with any constitutional provision," the joint trial was not "clearly inappropriate" within the meaning of ORS 136.060(1). *Coleman*, 130 Or App at 662.

■ Thus, in examining whether joinder is "clearly inappropriate," our cases have focused on whether joinder either violates a pertinent statute or contravenes the state or federal constitution. Substantial prejudice, by itself, is insufficient.

Defendant contends that, in some cases, the likelihood of substantial prejudice is so strong that severance should be required as a matter of law. In particular, he contends that, when two defendants assert mutually exclusive defenses, neither can obtain a fair trial if tried jointly because the jury necessarily must believe one defendant or the other. According to defendant, in such circumstances a fair trial is impossible, because the jury will be inclined merely to choose which defendant is guilty, regardless of whether the state has established the guilt of either beyond a reasonable doubt. Defendant observes that a number of decisions from other jurisdictions suggest that separate trials may be required when jointly indicted defendants rely on mutually exclusive defenses. *See, e.g., United States v. Berkowitz*, 662 F2d 1127, 1134 (5th Cir 1981) (severance required where defendants assert defenses that are "antagonistic at their core," because a substantial possibility exists that the jury will infer guilt from the conflict alone); *Hill v. State*, 481 So 2d 419, 425 (Ala

Crim App 1985) (severance required when defenses are "so inconsistent that the jury would have to believe one defendant at the expense of the other"); *State v. Brown*, 573 A2d 886, 891 (NJ 1990) (severance required when defendants assert defenses that "are antagonistic at their core"); *People v. Cardwell*, 580 NE2d 753, 754 (NY 1991) (severance required when mutually exclusive defenses create a danger "that the conflict alone would lead the jury to infer defendant's guilt"); *see also* Wade R. Habeeb, Annotation, *Antagonistic Defenses as Ground for Separate Trials of Codefendants in Criminal Case*, 82 ALR 3d 245 (1978 & 1995 Supp). The state replies that those decision are inapposite, because they do not apply Oregon's joinder statute, which favors joinder more strongly than does the law of other jurisdictions.

At the outset, we note that it is not entirely clear that defendant's and Simmons's defenses were "mutually exclusive." The state attempted to prove that *both* were guilty. The jury was not necessarily put in the position of determining *which* defendant was telling the truth. It could have believed or disbelieved portions of either defendants' testimony and convicted both of the same offenses.

In any event, we decline to adopt the *per se* rule of severance that defendant proposes. To begin with, it is derived from cases that apply rules that are different from ORS 136.060. The federal cases, for example, are based on Federal Rules of Criminal Procedure 8(b) and 14, which permit defendants to be charged together if the defendants are alleged to have participated in the same acts or transactions constituting the offense and which permit courts to order separate trials "[i]f it appears that a defendant or the government is prejudiced." In the state court decisions on which defendant relies, the applicable rules are similarly more permissive about joinder in criminal cases. *See, e.g., Brown*, 573 A2d at 890 (citing applicable New Jersey rule of practice governing severance as *permitting* courts to order severance "if it appears that a defendant or the State is prejudiced" by joint trial). ORS 136.060, in contrast, *requires* joinder unless doing so is "clearly inappropriate."

Moreover, even under the federal standard, no *per se* rule applies. In *Zafiro v. United States*, 506 US 534, 113 S Ct

933, 122 L Ed 2d 317 (1993), the Court declined to adopt a "bright-line rule, mandating severance whenever codefendants have conflicting defenses." 506 US at 538. "Mutually antagonistic defenses," the Court held, "are not prejudicial *per se.*" *Id.* The court instead held that, in accordance with Federal Rules 8(b) and 14, trial courts should grant a motion to sever

> "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. * * * The risk of prejudice will vary with the facts in each case * * *."

*Id.* at 539.

We turn, then, to whether it was "clearly inappropriate" under ORS 136.060(1) to try defendant and Simmons jointly. Defendant makes no argument that, by declining to sever, the trial court violated any particular statute or constitutional provision. Defendant does argue that events that occurred during the trial itself violated various rules of evidence or constitutional provisions and that those violations demonstrate why it was clearly erroneous for the court to have failed to grant defendant's motion to sever. When we review a trial court's ruling on a motion to sever, however, we examine the decision in light of the arguments asserted and circumstances pertaining at the time the pretrial motion was made. As we explained in *State v. Quintero*, 110 Or App 247, 252 n 6, 823 P2d 981 (1991), *clarified on recons* 114 Or App 142, 843 P2d 496, *rev den* 314 Or 392 (1992):

> " 'Appellate review * * * in this context (a motion to sever) should center on the circumstances as they appeared at the time the motion was ruled on. It would be improper to evaluate the decision *post facto*, that is, in the light of all the facts which were adduced at trial.' "

(Quoting *State v. Tyson*, 72 Or App 140, 143 n 3, 694 P2d 1003, *rev den* 299 Or 37 (1985).) Errors that occur during trial may provide grounds for a mistrial motion or for other relief, but they cannot provide the basis for a motion to sever. *Id.* at 251 n 4. We conclude therefore that defendant has failed to demonstrate that it was clearly inappropriate within the meaning of ORS 136.060(1) to try him jointly with Simmons.

Defendant asserts numerous other assignments of error. We have considered each of them and reject them without further discussion.

Affirmed.