BREWER, J.
Defendant appeals his convictions for hindering prosecution and conspiracy to commit murder. Defendant asserts that the trial court erred in admitting testimony of a police officer concerning statements that defendant made to the officer through interpreters. He also challenges the trial court’s ranking at sentencing of his conviction for conspiracy to commit murder as a level 11 offense under the sentencing guidelines based on what he asserts were aggravating factors that were not found by a jury beyond a reasonable doubt. We affirm.
Shortly after a fatal drive-by shooting, a surviving witness identified Adrian Montoya-Franco as the shooter. A couple of days later, police stopped a car that defendant was driving, in which Montoya-Franco and another man were passengers. The police detained the three men for questioning about the murder.
Detective Tallan, the lead police investigator, interviewed defendant at the police station. Tallan, who understands little Spanish, conducted the interview with the assistance of two interpreters, Detectives Bethers and Diaz. During the interview, defendant made a number of admissions about his role in the effort to track down and kill the victim, including an earlier, unsuccessful, effort to commit the murder. At trial, Diaz testified that he is a native Spanish speaker who acts as a police interpreter. He testified that he and defendant were able to understand each other, that he interpreted defendant’s statements word for word, that Tallan took down specific quotes from defendant’s translated responses, that Diaz later read Tallan’s written report, and that the report was accurate. Bethers, also a police detective, translated different portions of Tallan’s interview with defendant. Bethers is not a fluent Spanish speaker, but he testified that he had conversational ability to speak and understand Spanish and that he used Spanish skills daily in his job. Bethers did not take notes of Tallan’s interview with defendant, but Tallan took notes. Bethers later reviewed those notes and determined that they were accurate.
At trial, after Diaz and Bethers had testified, the prosecutor called Tallan as a witness. The following colloquy ensued:
*658 “[PROSECUTOR] Detective Tallan, were you able to get some sort of background information from the defendant about other people involved in this case?
“A. Yes.
“Q. Did you specifically talk to him about different vehicles that people owned or used?
“A. Yes.
“Q. What did he — did he indicate what type of vehicle he had?
“[DEFENSE COUNSEL] Objection, Your Honor; hearsay. It violates my client’s right of confrontation.”
The court did not immediately rule on the objection. Instead, the prosecutor attempted to lay a foundation by eliciting testimony from Tallan that defendant had been advised of his Miranda rights and that defendant had signed a Miranda advice card, a consent to search card, and another Miranda advice card later that night during the interview.
At that point, the prosecutor resumed questioning Tallan about defendant’s statements:
“Q. Detective Tallan, let’s then go back to what [defendant] was indicating to you what vehicles people drove.
“[DEFENSE COUNSEL] Objection, Your Honor; it’s still hearsay and it still violates my client’s right to confrontation.
“[PROSECUTOR] Your Honor, it is not hearsay in any form of the word.
“THE COURT: Overruled.
“[DEFENSE COUNSEL] Both grounds, Your Honor?
“THE COURT: Both grounds are overruled.
“[DEFENSE COUNSEL] May I have a continuing objection to any statements my client — he is relating about my client?
“THE COURT: You may.”
On cross examination, Tallan testified that portions of his interview with defendant were conducted in English, not Spanish.
*659 The jury convicted defendant of both charged offenses. At sentencing, over defendant’s objection that he was entitled to a jury determination if the court were to impose a sentence in excess of 90 months’ imprisonment, the trial court ranked defendant’s conviction for conspiracy to commit murder (an unranked offense under the sentencing guidelines) at the same crime seriousness level as a completed murder. Without submitting any sentencing issue for the jury’s determination, the court then imposed a 128-month presumptive prison sentence on the conspiracy to commit murder conviction under the sentencing guidelines. Defendant appeals, assigning error to both the trial court’s evidentiary ruling and its sentencing decision.
The parties advance and parry with numerous arguments on appeal with respect to the challenged evidentiary ruling. In a nutshell, defendant asserts that the trial court erred in overruling his hearsay objection[1] on the ground that, in order to answer the posited question, Tallan was required to recount one of the two police interpreters’ translated accounts of defendant’s underlying statement. The admission of such testimony, in defendant’s view, ran afoul of the Supreme Court’s holding in State v. Rodriguez-Castillo, 345 Or 39, 48, 188 P3d 268 (2008), that an interpreter’s account of a witness’s out-of-court statement is required— independently of the underlying statement — to pass separate muster under the hearsay rule. The state responds that (1) defendant’s argument on appeal is not preserved; (2) even if preserved, it is not well taken because the interpreters acted as defendant’s agents for purposes of translating his statements and, therefore, the interpreters’ statements were *660 not hearsay under OEC 801(4)(b)(C) or (D);[2] and (3) even if the trial court erred, admission of the evidence was harmless because it was unlikely to have affected the verdicts. Because we conclude that defendant did not adequately preserve the argument that he makes on appeal, we need not consider the state’s alternative arguments.
To preserve an issue for appeal, a party’s explanation of its position must be “specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted.” State v. Wyatt, 331 Or 335, 343, 15 P3d 22 (2000). One of the primary purposes of preservation is to ensure that the opposing party is not surprised, misled, or denied the opportunity to meet the argument in the trial court. State v. Roble-Baker, 340 Or 631, 640, 136 P3d 22 (2006).
Defendant concedes that, if offered without translation, his statements were admissible under OEC 801(4)(b)(A), which provides that a “party’s own statements” are not hearsay. Therefore, as defendant acknowledges on appeal, the only cognizable hearsay objection that he could have made, based on Rodríguez-Castillo, would have been to any translation of his statement that underlay Tallan’s testimony. The difficulties with that proposition, on this record, are intractable. First of all, no such objection was made to the trial court in any coherent way. In making his objection, defendant did not refer to any translation of his statement, and it is apparent that the prosecutor did not understand defense counsel to be making such a reference. When the objection was initially made, the prosecutor responded by laying a foundation for Tallan’s testimony based on the officers’ extensive provision of Miranda warnings. From that response, it appears that the prosecutor understood defendant to argue that his statement was hearsay because, on account of a constitutional infirmity, it failed to qualify as an admissible statement of a party under OEC 801(4)(b). When *661 defendant renewed his hearsay objection after that foundation was laid, the prosecutor replied that the statement was not hearsay “in any form of the word.” Because defendant did not elaborate on his objection with any cogent explication, the prosecutor and the trial court had no reason to doubt that defendant was making a pro forma — and mistaken — hearsay objection to a statement that, in light of OEC 801(4)(b), was patently nonhearsay. Thus, rather than attempt to lay a foundation for the admission of any translated statement under an agency theory (which is the theory of admissibility that the state espouses on appeal), the prosecutor took a different foundational tack — that is, to establish the voluntariness of defendant’s own statements — which has no bearing on the layered hearsay argument that defendant elaborates for the first time on appeal. See Peeples v. Lampert, 345 Or 209, 219, 191 P3d 637 (2008) (explaining that preservation allows a trial court to avoid or correct its own error, ensures fairness to an opposing party, and fosters full development of the record).
To reinforce the point, even though Tallan and the two police interpreters had previously testified that Tallan had interviewed defendant with the assistance of the interpreters, the question to which defense counsel objected did not expressly call for a hearsay response. Instead, the prosecutor asked Tallan to recount what defendant “was indicating to you.” In order to establish that the answer would have been inadmissible hearsay, defendant could have inquired in aid of objection whether the answer was recounted by one of the interpreters. Defendant’s failure to do so is more than academic, because, as noted, in later cross-examination, Tallan testified that portions of defendant’s interview were conducted in English. Therefore, in the end, defendant’s failure to adequately elaborate the precise nature of his objection has made it impossible to determine whether the triad court erred at all. See State v. Hasson, 153 Or App 527, 531, 958 P2d 183 (1998) (where the defendant objected to the admission of an entire tape recording and did not distinguish among the various statements that the victim had made during the conversation, if any one of the victim’s statements contained on the tape recording were admissible in the face of a hearsay objection, the appellate court would affirm the trial *662 court’s ruling on the admissibility of the tape recording). In sum, we conclude that defendant’s assignment of error to the trial court’s evidentiary ruling is unpreserved.
We turn to defendant’s challenge to the trial court’s sentencing decision. Before his sentencing, defendant filed a memorandum in which he argued that any sentence that the court imposed on his conspiracy to commit murder conviction in excess of a 90-month prison term under Ballot Measure 11 would be unconstitutional in the absence of appropriate factual findings being made by the jury. As noted, the trial court rejected that argument, ranked the conviction as a level 11 offense, and imposed a 128-month prison sentence. In doing so, the court stated:
“THE COURT: * * * The court ranks the conspiracy to commit murder charge as a level 11 charge, which places you in a grid block of 11-H, and the basis for this ranking is that the underlying crime of murder is ranked as an 11 by the sentencing guidelines.
“The evidence elicited during your trial established that your involvement in the planning and preparation of the eventual murder of [the victim] warrants the court placing you in this grid block and ranking the conspiracy to commit murder in the same level. In fact, it would appear that but for the intoxication of Mr. Mariscal-Lopez, you would have committed the murder yourself, since you gave him the gun that he then attempted to shoot and couldn’t shoot because he, by his own description was under the influence of narcotics.
“So, it is your — it’s your dumb luck, if you will, that he was not able to achieve the killing at the time that you were in the truck with him and the first attempt on the victim’s life the basis for this ranking is that the underlying crime of murder is ranked as an 11 by the sentencing guidelines.”
Defendant renews his objection to the sentence on appeal.
In Apprendi v. New Jersey, 530 US 466, 490, 120 S Ct 2348, 147 L Ed 2d 435 (2000), the Court held that the Sixth Amendment to the United States Constitution requires that, “[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved *663 beyond a reasonable doubt.” Pursuant to that rule, the Court explained in Blakely v. Washington, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), that enhancement facts required for the imposition of an upward departure sentence must be found by a jury beyond a reasonable doubt.
Those holdings do not apply to discretionary matters decided by trial courts, such as the ranking of offenses under the sentencing guidelines. The ranking of an unclassified offense does not increase the maximum sentence that a jury verdict authorizes but, instead, establishes the maximum sentence that is permitted in the absence of special jury factual findings. OAR 213-004-0004 provides:
“Except for ORS 163.095-163.105 Aggravated Murder, when a person is convicted of any other felony which is omitted from the Crime Seriousness Scale, the sentencing judge shall determine the appropriate crime category for the current crime of conviction and shall state on the record the reasons for the offense classification.”
The commentary to the rule indicates that the seriousness of the offense of the underlying intended crime “should in most cases determine the crime seriousness” of the conspiracy conviction. Commentary, Oregon Sentencing Guidelines Implementation Manual 14 (1989). The sentencing court, however, has discretion to rank an unclassified offense even higher than its predicate offense. See State v. Coleman, 130 Or App 656, 883 P2d 266 (1994), rev den, 320 Or 569 (1995) (racketeering properly ranked higher than its predicate offense).
Thus,
“it is clear that the sentencing court has the discretion to determine the seriousness of an unranked offense. Our review under ORS 138.222(4)(b) is limited to whether the court’s reasons are stated on the record and whether those reasons reflect a proper exercise of the court’s discretion.”
State v. Rathbone, 110 Or App 419, 421-22, 823 P2d 432 (1991), rev den, 313 Or 300 (1992) (Footnote omitted). In State v. Evans, 113 Or App 210, 215, 832 P2d 460 (1992), we held that the sentencing court had “discretion to rank conspiracy to commit murder in the same crime seriousness category as the completed act of murder.” The sentencing court *664 in this case did just that: it ranked defendant’s crime seriousness category for his conspiracy to commit murder at category 11, the same category that the legislature prescribed for completed murder.
Defendant remonstrates that “ORS 137.700 provides that the presumptive sentence for conspiracy to commit murder is 90 months’ prison. ORS 137.700(2).” Defendant is mistaken. ORS 137.700 only prescribes the mandatory minimum sentence for the crime of conspiracy to commit murder; it specifically permits the imposition of “a greater sentence if otherwise permitted by law, but * * * not * * * a lower sentence[.]” The presumptive sentence for conspiracy to commit murder is determined by the sentencing guidelines gridblock. Because the offense is unclassified, its ranking — and thus its presumptive sentence — is controlled by the crime seriousness ranking that the sentencing court assigns to it. In this case, the sentencing court ranked defendant’s conspiracy crime seriousness at level 11. The presumptive sentence for a grid block 11-H offender such as defendant here is 122 to 128 months’ imprisonment. It follows that the sentence that the court imposed in this case was not a departure but, rather, was within the presumptive range. Thus, Apprendi and Blakely do not forbid the sentence that the court imposed.
Affirmed.

 Defendant does not make a separate argument on appeal that admission of the challenged evidence violated his “confrontation rights.”

 OEC 801(4) provides, in pertinent part:
“A statement is not hearsay if:
“(b) The statement is offered against a party and is:
*653 “The plaintiff waited and made his request to amend his pleading during trial apparently in an attempt to meet objections to plaintiffs evidence which did not conform to his pleadings. After the court’s ruling on plaintiffs motion for summary judgment, the plaintiff knew or should have known of the need to submit new evidence and or new pleadings. The untimely attempt to amend at the close of plaintiffs case raised a completely new set of legal issues and if allowed, imposed a tremendous additional burden of proof on the defendants. This burden they had no advance notice of and no opportunity to prepare to meet.
*659 “(C) A statement by a person authorized by the party to make a statement concerning the subject;
*660 “(D) A statement by the party’s agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationshipt.]”