198 June 3, 2026 No. 478

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BRIAN DANIEL BEMENT,
*Defendant-Appellant.*

Washington County Circuit Court
C100622CR; A180315

Eric Butterfield, Judge.

Argued and submitted January 21, 2025.

Daniel C. Bennett, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission. Brian Daniel Bement filed the supplemental brief *pro se*.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, Hellman, Judge, and O'Connor, Judge.*

ORTEGA, P. J.

Remanded for resentencing; otherwise affirmed.

_____

\* O'Connor, Judge, *vice* Mooney, Senior Judge.

**ORTEGA, P. J.**

Defendant appeals a judgment convicting him, after a retrial, of first-degree murder (Count 1), ORS 163.107, first-degree robbery with a firearm, ORS 164.415, and felon in possession of a firearm (FIP), ORS 166.270. Defendant raises three assignments of error through counsel and two *pro se* assignments. In his first counseled assignment, defendant argues that the trial court erred in imposing a sentence of life imprisonment without the possibility of parole (a true-life sentence) under ORS 163.107(2) (b) based on judicial factfinding, in violation of his right to a jury trial under the Sixth Amendment to the United States Constitution as construed in *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000), and *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004). In his second and third counseled assignments, he argues that the trial court erred when it failed to dismiss Count 1 or order a mistrial based on the state's presentation of evidence that defendant possessed bloody money but its failure to inform the jury that the blood did not belong to the victim. In his first *pro se* assignment, defendant contends that the trial court erred by denying his motion to prevent the state from engaging in misconduct at his retrial. Defendant's second *pro se* assignment raises essentially the same argument as his second and third counseled assignments.

We agree with defendant that the trial court's imposition of a true-life sentence under ORS 163.107(2) (b) based on judicial factfinding of its "reasons" for doing so violated the Sixth Amendment. We therefore need not address defendant's argument that whether he was at least 18 years old at the time of the offense is also an enhancement fact that must be found by a jury. We reject defendant's remaining counseled assignments of error and his second *pro se* assignment as undeveloped and unpreserved. Finally, we decline to consider defendant's first *pro se* assignment of error because it fails to comport with ORAP 5.45. Accordingly, we remand for resentencing and otherwise affirm.

We begin by recounting the procedural history of this case and include additional facts in our analysis of each assignment of error. In 2010, defendant shot and killed G and stole over $13,000 in cash from him. Defendant did not dispute at either of his trials that he shot and killed G, but he maintained that he acted in self-defense when G tried to rob him at gunpoint. In 2012, a jury convicted defendant of aggravated felony murder, ORS 163.095(2)(d) (2009), two counts of the lesser-included charge of intentional murder, two counts of first-degree robbery with a firearm, and FIP.[1] In a separate penalty-phase proceeding, the jury declined to impose a death sentence and instead imposed a sentence of life imprisonment without the possibility of parole on Count 1.

On defendant's first appeal, we held that the trial court had committed prejudicial error in excluding G's email statements regarding G's financial problems, and we reversed and remanded for a retrial. *State v. Bement*, 284 Or App 276, 300, 391 P3d 838 (2017), *aff'd*, 363 Or 760, 781, 429 P3d 715 (2018). Meanwhile, the 2019 Legislative Assembly enacted Senate Bill (SB) 1013, which "restructured Oregon's murder statutes, limiting the circumstances in which the death penalty would be an available punishment" by redefining aggravated murder, ORS 163.095, and creating new offenses of first- and second-degree murder, ORS 163.107(1) and ORS 163.115(1). *State v. Wolfe*, 368 Or 38, 44, 486 P3d 748 (2021).

In 2022, the state retried defendant under the same indictment without formally moving to amend it; the parties treated Count 1 as if it alleged first-degree murder. *Compare* ORS 163.095(2)(d) (2009) (personally and intentionally committing homicide in the course of committing first-degree robbery constitutes aggravated murder) *with* ORS 163.107(1)(j) (personally and intentionally committing homicide in the course of committing first-degree robbery constitutes first-degree murder). The state dismissed the two other murder counts. A jury again found defendant guilty of the remaining counts, and defendant timely appeals the judgment of conviction and sentence.

---

[1] At the first sentencing hearing, the court merged the two counts of first-degree murder with Count 1 and the two counts of first-degree robbery.

## PROSECUTORIAL MISCONDUCT

A.  *Admission of Bloody Money*

At trial, the state presented testimony that a forensic analyst searched defendant's car and found approximately $13,000 in cash, including several one-dollar bills with blood on them. The state then offered Exhibit 34E, a photograph of one such bloody dollar bill. Defendant did not object to the testimony or to Exhibit 34E at that time.

After the parties rested, defendant requested that the court give a less-satisfactory evidence instruction to the jury based on Exhibit 34E and its "clear implication" that it was G's blood found in defendant's car, because the state had disclosed in discovery an analytical report that excluded G from the blood's DNA profile but failed to call that forensic examiner as a witness at trial. Defendant then moved to dismiss Count 1 "and replace that with murder in the second degree and dismiss the two robbery charges, based on the argument *** already made related to *** [Exhibit] 34E." The court denied the motion.

On appeal, defendant asserts that the trial court erred when it failed to dismiss Count 1 or grant a mistrial "based on the state's presentation of misleading and inflammatory evidence." Defendant acknowledges that he did not seek a mistrial below, but he "requests that he construe his motion to dismiss as a motion for mistrial," should "this court believe[] that to be the proper procedural mechanism." Defendant appears to believe that to be correct, because his combined argument in support of these two assignments is framed entirely as a motion for mistrial.

The problem is that defendant does not seek plain-error review of his mistrial argument, which he acknowledges he did not raise below, and he fails to develop any argument on appeal regarding the motion and remedy he did ask for. Accordingly, we reject defendant's second and third counseled assignments of error as undeveloped and unpreserved, respectively. *State v. Ardizzone*, 270 Or App 666, 673, 349 P3d 597, *rev den*, 358 Or 145 (2015) ("[W]e ordinarily will not proceed to the question of plain error unless an appellant has explicitly asked us to do so because

it is incumbent upon the appellant to explain to us why an error satisfies the requisites of plain error and, further, why we should exercise our discretion to correct that error." (Internal quotation marks omitted.)); *State v. Perez-Martinez*, 348 Or App 420, 435, ___ P3d ___ (2026) (rejecting a legal argument that was not supported by any identified legal authority as undeveloped).

Defendant's second *pro se* assignment of error, which contends that the trial court erred "by not protecting defendants [*sic*] due process by dismissal or mistrial when the prosecutor committed misconduct" and focuses on the state's admission of Exhibit 34E, fails for the same reasons.

B. *Motion to Prevent the State from Engaging in Misconduct at Retrial*

Defendant's first *pro se* assignment of error challenges the denial of his motion "to prevent [the] state from acting improperly at trial." Defendant filed that motion in July 2022 and asserts that the trial court denied it, but he does not direct us to anywhere in the record that indicates that the court ever ruled on the motion. Defense counsel attempted to argue the motion at an omnibus hearing only to realize that they had never filed the motion, so the court did not rule on it at that time. And although the trial court register reflects that defendant filed the motion later that day, the register does not contain a corresponding order, and defendant has not directed us to where in the transcript the court orally ruled on the motion. Accordingly, we decline to address this assignment of error. ORAP 5.45(4)(a) ("The court may decline to consider any assignment of error that requires the court to search the record to find the error or to determine if the error properly was raised and preserved.").

SENTENCING UNDER ORS 163.107

In August 2020, defendant filed a motion *in limine* regarding the first-degree murder sentencing scheme, in which he argued that under ORS 163.107(2) the presumptive sentence for first-degree murder as alleged in Count 1 is life imprisonment with a 30-year minimum term. Defendant acknowledged that the statute allows the court to impose a true-life sentence, but only if the defendant was at least 18

years old at the time of the offense, and if the court states on the record "the reasons for imposing the sentence." ORS 163.107(2)(b). Defendant contended that those two requirements were subject to the Sixth Amendment principle, articulated in *Apprendi*, that any fact that enhances a sentence or exposes the defendant to a greater punishment, aside from a prior conviction, must be found by a jury. Defendant also argued, among other things, that the two prerequisites to imposing a true-life sentence are "enhancement facts" under ORS 136.760 to 136.792.

The state responded that, in its view, "the 'statutory maximum' sentence for first-degree murder is life without the possibility of parole, so long as the defendant was at least 18 years of age when the crime was committed" and that "by virtue of the wholesale changes to the Oregon's [*sic*] murder statutes enacted in 2019, the legislature effectively created a sentencing range giving discretion to the court to decide the appropriate sentence." Alternatively, the state requested that "a separate post-verdict jury trial on the enhancement factors separately filed be conducted," and, in anticipation of the defense asserting "that the timing of the enhancement notice violates notice requirements," the state requested the court to "find good cause (as allowed by ORS 136.765) based on the changed statutory scheme, the timing of the defendant's pleading, and *State v. Roberts*, 231 Or App 263[, 219 P3d 41] (2009)."

The parties reiterated their arguments on the sentencing issue at an omnibus hearing in July 2022. When defendant pointed out that a similar issue was pending on appeal, the court suggested that they wait to address the issue at a sentencing hearing, should defendant be convicted, in case they received further direction from a higher court in the meantime.[2] Defendant assented to doing so.

After the jury returned its verdict, the trial court stated, "frankly, I think that an enhancement trial is unnecessary" but that it was "considering doing it in an

---

[2] They were referring to *State v. Johnson*, 329 Or App 588, 542 P3d 467 (2023), *rev den*, 372 Or 718 (2024), discussed in more detail below, involving another defendant who was initially convicted of aggravated murder but later retried for first-degree murder and sentenced under ORS 163.107 after SB 1013 took effect.

abundance of caution." After further discussion of the logistics of a penalty-phase trial, the court denied the motion outright and discharged the jury.

At the sentencing hearing, the court imposed a sentence of life imprisonment without the possibility of parole after stating its reasons on the record:

"THE COURT:   So, my belief is that the jury decided that this was a premeditated murder, that the defendant took [G] to a remote location intending to kill him and then did exactly that. For purposes of sentencing, I'm finding that it was a premeditated murder and that [G] was a vulnerable individual, in light of his current condition, including addictions and maybe some underlying mental health issues.

"I would note for the record, [defendant's] significant and violent criminal history, including multiple incidents of threatened use of at least what appear to be a firearm, threatened use of a stun gun in kind of a terrorizing way. Also, I note his lack of remorse. I'm going to sentence him to life without the possibility of parole, accordingly, on Count 1."

On appeal, defendant renews his argument that under ORS 163.107(2) the presumptive sentence for first-degree murder as alleged in Count 1 is life imprisonment with a 30-year minimum term and that the two prerequisites for the court to impose a true-life sentence—his age and the court's "reasons" for doing so—must be found by a jury to comport with the Sixth Amendment. In defendant's view, our recent decision in *State v. Johnson*, 329 Or App 588, 630-38, 542 P3d 467 (2023), *rev den*, 372 Or 718 (2024), construing ORS 163.107 supports his position.

The state responds that the plain text of ORS 163.107(2) "does not create a mandated 'presumptive sentence' with the possibility of an 'upward departure' to impose a longer sentence but only if findings of specific particular aggravating or sentence-enhancement facts have been made." Rather, the state argues, "on its face, ORS 163.107(2)(b) purports to give a sentencing court unbridled discretion to choose between the two sentencing alternatives," as long as it states its "reasons" for doing so. In the state's view,

such "reasons" do not require additional factual findings and instead are akin to a sentencing court's discretionary "reasons" for determining the offense classification for an offense that is not ranked on the crime-seriousness scale of the sentencing guidelines. *See State v. Ibarra-Ruiz*, 250 Or App 656, 663, 282 P3d 934, *rev den*, 353 Or 127 (2012) (holding that *Blakely* does "not apply to discretionary matters decided by trial courts, such as the ranking of [unranked] offenses under the sentencing guidelines"). It follows, the state contends, that ORS 163.107(2)(b) does not implicate the Sixth Amendment jury-trial right and defendant was not entitled to have a jury consider and find the aggravating facts on which the sentencing court relied to impose the true-life sentence. Finally, the state asserts that *Johnson* is inapposite because "this court did not expressly—or even necessarily—resolve whether the *Apprendi*/*Blakely* rule applies to 'the reasons' clause" in ORS 163.107(2)(b).

ORS 163.107(2) provides:

"(2)(a)   *Except as otherwise provided in* ORS 163.155 [applying to murder of a pregnant victim] and *paragraph (b) of this subsection, the court shall sentence a person convicted of murder in the first degree, who was at least 15 years of age at the time of committing the murder, to life imprisonment. The court shall order that the defendant be confined for a minimum of 30 years without possibility of parole or release to post-prison supervision* except as provided in ORS 144.397 [applying to juvenile offenders], and without the possibility of release on work release or any form of temporary leave or employment at a forest or work camp.

"(b)   *The court may sentence the person to life imprisonment without the possibility of parole if the person was at least 18 years of age at the time of committing the murder. The court shall state on the record the reasons for imposing the sentence.* A person sentenced to life imprisonment without the possibility of release or parole under this paragraph shall not have that sentence suspended, deferred or commuted by any judicial officer, and the State Board of Parole and Post-Prison Supervision may not parole the prisoner nor reduce the period of confinement in any manner whatsoever. The Department of Corrections or any executive official may not permit the prisoner to participate in any sort of release or furlough program."

(Emphases added.)

As noted, we recently construed ORS 163.107(2) in *Johnson*, so we begin there. In that case, the defendant was retried for first-degree murder under ORS 163.107 after SB 1013 took effect. 329 Or App at 593. In a pretrial motion, the defendant argued that the provision in ORS 163.107(2)(b) for imposing a sentence greater than life with the possibility of parole violated the Sixth Amendment because, in his view, it authorizes an enhanced sentence based on facts found by the court, rather than by a jury. *Id.* at 631-32. As the defendant noted, "[o]ther than a fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt," *Apprendi*, 530 US at 490, and the "statutory maximum" for purposes of that rule "is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict," *Blakely*, 542 US at 303.

The state remonstrated that a sentencing jury could be empaneled pursuant to ORS 136.760 through ORS 136.792 to find enhancement facts and that, given the preference for construing statutes to be constitutional, ORS 163.107 should be viewed as operating in conjunction with ORS 136.760 through ORS 136.792 to allow for a sentencing jury to find facts upon which a court could base its reasons for imposing an enhanced sentence under ORS 163.107(2)(b). *Johnson*, 329 Or App at 632. The trial court agreed with the state.[3] After a jury returned guilty verdicts on all counts of first-degree murder, the court submitted sentencing-enhancement factors derived from Oregon's felony sentencing guidelines to the jury to consider. *Id.* at 599. The jury returned findings on five factors, including that the defendant knew or had reason to know of the victim's particular vulnerability; that prior sanctions had not deterred him from re-offending; that he was on supervision at the time of the offense; that future efforts to rehabilitate him would not be successful; and that there was a need to ensure the security of the public. *Id.* at 632. The court then indicated that

---

[3] We note that the trial and sentencing judge in this case also presided over the trial and sentencing in *Johnson*.

the defendant was at least 18 years of age and gave as its reasons for imposing a true-life sentence the five enhancement facts found by the sentencing jury. *Id.*

On appeal, the defendant renewed his argument that the provisions of ORS 163.107(2)(b) that "[t]he court may sentence the person to life imprisonment without the possibility of parole" and "shall state on the record the reasons for imposing the sentence" violate the Sixth Amendment under *Apprendi/Blakely* because ORS 163.107 contains no language that authorizes a trial court to use ORS 136.760 through ORS 136.792 when determining whether to impose an enhanced true-life sentence. *Id.*

We rejected the defendant's argument. In doing so, we made several observations. First, "it is axiomatic that we should construe and interpret statutes in such a manner as to avoid any serious constitutional problems." *Id.* at 636 (internal quotation marks omitted). Second, the legislature enacted ORS 136.760 through ORS 136.792 "shortly after" and "specifically in response to *Blakely*" to "remedy the previously-authorized judicial factfinding of sentence enhancement facts." *Id.* at 632 n 20, 636. Third, there is no textual indication in those statutes that they would not apply to newly-enacted offenses, such as first-degree murder under ORS 163.107, and they "are written very broadly" such that the statutory definition of "enhancement fact" and the provisions for submitting enhancement facts to a jury "are crafted in such a way that a trial court may empanel a jury to find enhancement facts *in any situation* in which jury findings of enhancement facts are required to impose an enhanced sentence." *Id.* at 637 (emphasis added).

We concluded:

"When ORS 163.107(2)(b) is viewed in the context of those related statutes that apply generally to sentencing practices, it becomes evident that the statutes work together harmoniously in a manner that results in a constitutional sentence: A jury is empaneled—should the defendant choose to have sentence enhancement facts found by a jury—under ORS 136.770 or 136.773. If the jury finds enhancement facts proven beyond a reasonable doubt, ORS 136.785(2), the court may then, under ORS 163.107(2)

(b) and ORS 136.785(5), choose to impose an enhanced sentence and, in so doing, it must state on the record the jury-found enhancement facts it is relying on to impose the enhanced sentence."

*Id.* at 637. Because the trial court had followed that procedure for submitting enhancement facts to the jury during sentencing and imposing an enhanced sentence based on those facts, we concluded that it had not violated the Sixth Amendment under *Apprendi* and *Blakely. Id.*

Returning to the parties' arguments in this case, we agree with defendant that *Johnson* construed ORS 163.107(2)(a) as setting forth the "statutory maximum" sentence of life imprisonment with the possibility of parole after 30 years for purposes of *Apprendi/Blakely. See id.* at 635 ("In our view, [ORS 163.107(2)(b)] give[s] a trial court discretion to impose *an enhanced sentence*—rather than a sentence of life with the possibility of parole." (Emphasis added.)). We therefore reject the state's argument that ORS 163.107 gives a sentencing court "unbridled discretion to choose between the two sentencing alternatives." *Johnson* further held that ORS 163.107 results in a constitutional sentence when the trial court follows the procedure set forth in ORS 136.760 through ORS 136.792 for submitting enhancement facts to the jury and imposing an enhanced sentence based on those facts, which we emphasized were enacted "specifically in response to *Blakely.*" *Id.* at 636-37. We reject the state's contrary argument that *Johnson* "did not expressly—or even necessarily—resolve whether the *Apprendi/Blakley* rule applies to 'the reasons' clause" in ORS 163.107(2)(b). To the contrary, as we read *Johnson*, we expressly rejected the defendant's argument that ORS 163.107(2)(b) runs afoul of *Apprendi/Blakely* precisely *because* we construed it together with ORS 136.760 through ORS 136.792, which "work together harmoniously in a manner that results in a constitutional sentence." *Johnson*, 329 Or App at 637. We did not, as the state argues, merely assume that *Apprendi/Blakely* applies to the imposition of the enhanced true-life sentence in ORS 163.107(2)(b).

Here, it is undisputed that the trial court did not do so and instead imposed an enhanced true-life sentence

based on its own findings that the murder was premeditated and the victim particularly vulnerable. That was error. The state did not plead enhancement facts in the indictment or otherwise provide defendant notice that it would rely on any such enhancement facts to seek a true-life sentence. And the jury's verdict reflected only findings that defendant was guilty of first-degree murder and that he used a firearm.

Finally, we address defendant's contention that we should reverse his sentence and order that he be sentenced to no more than life in prison with the possibility of parole, rather than remand for resentencing. That remedy is warranted, defendant argues, "given the already extreme length of the proceedings to this point * * *, the egregiousness of the error, and the trial court's apparent disdain for the role of both the appellate courts and the well-settled requirement that enhancement facts be submitted to the jury." Defendant further posits that "[i]t is now far too late for the state to provide timely notice [of enhancement facts] under the plain terms of ORS 136.765."

In our view, a remand for resentencing is the appropriate remedy in this case. We do find it troubling that the state took a position contrary to the position it took in *Johnson* and that the court made a ruling opposite to the ruling it had made in *Johnson*—which, as noted, was previously tried by the same district attorney's office before the same trial judge as this case. But in response to defendant's motion *in limine*, the state alternatively requested "a separate post-verdict jury trial on the enhancement factors," as well as for the court to find good cause for delayed notice under ORS 136.765 due to the changes SB 1013 wrought, among other reasons. And defendant assented to the trial court's suggestion that they wait to rule on his motion until sentencing in the event that they received further guidance from an appellate court. Nor is it clear that it is "too late" to provide timely notice of enhancement factors on remand. *See* ORS 136.790 (the state shall notify the defendant of its intention to rely on an enhancement fact "within a reasonable time before resentencing" when the sentence may be

imposed upon remand as described in Or Laws 2005, ch 463, § 21(3)). We therefore remand for resentencing.[4]

Remanded for resentencing; otherwise affirmed.

---

[4] Because we conclude that the trial court erred in imposing an enhanced true-life sentence based on judicial factfinding of "the reasons" for doing so, our disposition obviates the need to address defendant's argument that the other prerequisite for imposing a true-life sentence under ORS 163.107(2)(b)—that defendant was at least 18 years old at the time of the offense—is also an enhancement fact subject to the *Apprendi/Blakely* rule, which we did not resolve in *Johnson*. *See Johnson*, 329 Or App at 633-35 (assuming without deciding that the defendant's age was a fact that should have been submitted to the sentencing jury, while noting that it is an open question in Oregon and that some state courts have so concluded, but ultimately concluding that any error in failing to do so was harmless beyond a reasonable doubt).